TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00394-CV






Anne Dunn, Appellant



v.



Main Street Royalty, Inc., Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT


NO. 95-0-096, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING 






 Appellant, Anne Dunn, appeals the declaratory judgment rendered in favor of appellee,
Main Street Royalty, Inc. ("MSR"). MSR brought suit against Dunn, seeking construction of an oil and
gas lease executed between MSR and Dunn's predecessors, Kenneth and Sharon Kaiser ("the Kaisers"). 
The case was tried to the bench and resulted in the trial court rendering judgment in favor of MSR. On
appeal, Dunn brings ten points of error, complaining of the trial court's construction of the lease, the trial
court's admission of extrinsic evidence as to the intent of the original parties to the contract, and the
sufficiency of the evidence to support certain findings of fact. In one cross-point, MSR avers that the trial
court abused its discretion in failing to award attorney's fees to MSR under the Uniform Declaratory
Judgments Act. We will overrule all of Dunn's points of error as well as MSR's cross-point. Accordingly,
we will affirm the judgment of the trial court.




STATEMENT OF FACTS

 Through its president, Leon Gallaway, MSR entered into an oil and gas lease with the
Kaisers, the landowners of the property covered by the lease. The lease, executed on June 1, 1993,
provided for a two-year primary term and contained an addendum (the "Kaiser addendum"). One oil well
was drilled on the premises, which was completed no later than April 1994.

 On March 16, 1994, the Kaisers agreed to sell the subject property to Dunn and entered
into an Earnest Money Contract with her. A copy of the oil and gas lease, with the Kaiser addendum, was
attached to the Earnest Money Contract. Before the May 12th closing, however, a title attorney
questioned the clarity of paragraph five of the Kaiser addendum in light of paragraph three of the
addendum. (1) On April 6, 1994, Gallaway sent Kaiser an additional addendum, which purported to clarify
any ambiguity between the paragraphs. (2) Through her agent, Dunn made it known that she would not agree
to an amendment of the lease. At trial, Dunn testified that "[p]aragraph five was the main reason [she] was
taking a chance on buying this property and [she] would not buy it unless that paragraph stood."

 Testimony and evidence introduced at trial established that Kaiser wrote a letter to
Gallaway dated April 18, 1994 (the "April letter"). Kaiser sent copies of this letter to Dunn, the closing
attorney, and the real estate agent. (3) In the April letter, Kaiser explained that he was writing to confirm his
mutual understanding with Gallaway regarding paragraph five of the Kaiser addendum. The letter stated
that this paragraph "will apply only after expiration of the primary term, as extended by wells drilled during
the primary term, as provided by addendum paragraph three (3)." Further, Kaiser set forth his
understanding of the lease:


(1) The original paid up primary term of the lease is two (2) years from June 1, 1993.


(2) The original primary term will be extended 120 days for each well drilled during
the original primary term.


(3) The lease may be continued, per the provisions of addendum paragraph five (5),
after the expiration of the original or extended primary term, so long as there is
continuous drilling with no more than 120 days between completion of one well
and commencement of the next.


 On May 12, 1994, the Kaisers and Dunn closed the transaction, with Dunn acquiring a
warranty deed. Later that month, Gallaway and Dunn met for the first time. The parties do not agree as
to what transpired during this meeting. MSR contends that Dunn told Gallaway that the lease was
cancelled; whereas, Dunn denies that she made such a statement at that time. Dunn did inform Gallaway
in November 1994 that "he needed to make sure that he had a lease." Following this discussion, Dunn sent
Gallaway a letter in December 1994, which stated her position that the lease was automatically cancelled
in May 1994 according to paragraph five of the Kaiser addendum. MSR initiated this lawsuit soon
thereafter.

 In the action against Dunn, MSR sought to have the trial court construe the lease and
declare the rights of the parties, or, in the alternative, reform the lease. Following a bench trial, the trial
court ruled in favor of MSR, specifically finding that MSR held the rights under the lease as lessee, that
MSR had a two-year primary term in which to drill oil or gas wells, and that MSR had an additional period
of 120 days that would be added to the two-year primary term for each well drilled by MSR during the
primary term. Dunn now appeals the judgment of the trial court.


DISCUSSION

Ambiguity and Extrinsic Evidence

 As the resolution of the following points of error ultimately depends on whether the lease
was ambiguous, they will be discussed together. In points of error one and two, Dunn complains that the
trial court erred (1) in rendering judgment in MSR's favor because the lease had expired for nonproduction
according to its terms and (2) in construing the terms of the lease as providing a two-year primary term
which would subsist irrespective of wells drilled within the two-year primary term. In point of error three,
Dunn avers that the trial court erred in admitting evidence of the oral negotiations and "secret intent" of the
original parties to the lease in violation of the Parol Evidence Rule. Point of error eight claims that finding
of fact ten, in which the trial court found that Kaiser intended paragraph five of the addendum to provide
an extension mechanism for the primary term and not to shorten the two-year primary term, is immaterial
because it refers to the "secret intent" of the parties. MSR argues that the lease has not expired for
nonproduction and that the trial court did not err in its construction of the lease because paragraph five of
the Kaiser addendum applies only at the end of the lease's two-year primary term. Since we find that the
lease was ambiguous and that the trial court correctly construed it in favor of MSR, we will overrule Dunn's
points of error.

 In construing a lease, it is the court's task to seek the intention of the parties as that intention
is expressed in the lease. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Sun Oil Co.
(Delaware) v. Madeley, 626 S.W.2d 726, 727-28 (Tex. 1981). To achieve this objective, courts should
examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the
contract so that none will be rendered meaningless. Coker, 650 S.W.2d at 393. If the written instrument
is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous
and the court will construe the contract as a matter of law. Id. A contract, however, is ambiguous when
its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. Id. at 394. 
Ordinarily, where the terms of a written contract are plain and unambiguous, parol evidence is inadmissible
to show the parties' intent at the time, or subsequent to, the making of the contract. See Murphy v.
Dilworth, 151 S.W.2d 1004, 1005 (Tex. 1941). If a written instrument is reasonably susceptible to more
than one meaning, however, extraneous evidence is admissible to determine the true meaning of the
instrument. R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 519 (Tex. 1980). Thus,
if the interpretations that Dunn and MSR give the lease are both reasonable, the lease is ambiguous, and
the trial court properly admitted the extrinsic evidence of the parties' intent.

 The Kaiser addendum provides:

1. Failure by Lessee to begin drilling operations or to pay to Lessor the sum of $10 per
acre, on or before one year from date, shall cause this lease to terminate and expire.


* * * * *




3. Lessor and Lessee agree that if a well is drilled on land leased herein within the
primary term, lessee shall earn an additional 120 days on the primary term per well
drilled.


4. Should this lease remain in force after the expiration of the primary term by
production or operations, each producing oil well shall hold 2.07 acres.


5. Failure to drill a well within 120 days of the completion of a previous well during the
primary lease period shall result in automatic cancellation and forfeiture of this lease,
except as to acreage designated for each producing well as set out above, and Lessee
shall, no later than 30 days after the expiration of the primary term or failure to
conduct drilling operations as set out above, executed [sic] and deliver to Lessor(s)
a recordable release as to the acreage to be released.


* * * * *




 Dunn argues that the lease is not ambiguous because paragraphs three and five of the
Kaiser addendum can be harmonized. Dunn takes the position that, in order to continue even the two-year
primary term of the lease, paragraph five requires the lessee to drill an additional well within 120 days of
completion of any previously drilled well, even one drilled during the original primary term. According to
Dunn's theory, since the only well drilled was completed, at the latest, in April 1994, the lease expired 120
days later in August 1994 because MSR did not commence another well during that time. Dunn contends
this despite the fact that the original term was paid up and approximately one year remained on the original
two-year primary term. Thus, Dunn asserts that the lease had expired for nonproduction.

 Essentially, Dunn contends that the two-year primary term provided in the lease could be
subject to modification because of the Kaiser addendum. This interpretation is based on the following
language of paragraph five of the Kaiser addendum: "Failure to drill a well within 120 days of the
completion of a previous well during the primary lease period shall result in automatic cancellation and
forfeiture of this lease." It is unclear whether "primary lease period" refers to the original two-year primary
term or to extensions of the primary term. Depending on the meaning of "primary lease period," paragraph
five reasonably could be interpreted to mean that once the lessee has completed a well during the original
primary term, the lessee must drill a well every 120 days to continue even the two-year primary term of the
lease. This would be true even though the lease would remain in effect for the entire two years if no well
were drilled and completed but delay rentals were paid. However, this same language also could mean
that, once the lessee has completed a well during the two-year primary term, the lessee has earned an
additional 120 days past the expiration of the original primary two-year term. If, during this 120-day
extension, another well is not drilled, the lease would then expire. Such a reading supports MSR's
contention that paragraph five of the Kaiser addendum cannot reduce the original two-year primary term
as it is not triggered until the end of the two-year primary term. Either reading seems reasonable in light
of the surrounding paragraphs of the Kaiser addendum. Since the lease is reasonably susceptible to more
than one meaning, we hold that the lease is ambiguous. Consequently, the trial court properly admitted
evidence of the original parties' intent.

 The extrinsic evidence admitted at trial shows that the trial court's construction of the lease
comports with the original parties' intent. Kaiser testified that he intended the lease to provide for a two-year primary term which could be extended thereafter by 120 days for a well drilled during the primary
term. His April letter, which was admitted into evidence without objection from Dunn, also supports the
trial court's construction. Gallaway, the other original party to the lease, testified that his interpretation at
the time the lease was executed was that the primary term was for two years, that he had to drill a well in
the first year or pay delay rentals, and that the primary term could be extended by 120 days for wells drilled
during the primary term. Neither party intended for paragraph five of the Kaiser addendum to shorten the
two-year primary term called for in the lease. In light of this evidence, the trial court did not err in
construing the lease in MSR's favor.

 We hold that the lease is ambiguous, that the trial court properly admitted evidence of the
original contracting parties' intent, and that the trial court properly construed the lease in favor of MSR in
accordance with the parties' intent. Accordingly, we overrule points of error 

one, two, three, and eight.


Sufficiency of the Evidence

 In points of error four, five, six, seven, nine, and ten, Dunn challenges the sufficiency of the
evidence to support certain findings of fact. An appellate court reviews findings made by a trial court in
the same manner as jury findings. Lucas v. Texas Dep't of Protective & Regulatory Servs., 949
S.W.2d 500, 502 (Tex. App.--Waco 1997, writ denied). The reviewing court gives the findings the same
deference it would give to a jury's findings, with the trial court being the sole judge of the witnesses'
credibility and the testimony's weight. Hasty Inc. v. Inwood Buckhorn Joint Venture, 908 S.W.2d 494,
499 (Tex. App.--Dallas 1995, writ denied). When a complete statement of facts appears in the record,
the appellate court is not limited to the trial court's written findings of fact. Lucas, 949 S.W.2d at 502. 
The judgment will not be reversed because of erroneous findings if the judgment is otherwise correct on
the merits. Id. 

 When a no evidence point is brought, the reviewing court considers only the evidence and
inferences that tend to support the finding and disregards all evidence and inferences to the contrary. 
Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992). The finding will be upheld if more
than a scintilla of evidence supports it. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1994). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises
to a level that would enable reasonable and fair-minded people to differ in their conclusions. Id. In
considering a factual sufficiency challenge, we review all the evidence before the trial court. Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996). We sustain a challenge to the trial court's findings only if the findings
are so contrary to the great weight and preponderance of the evidence that they are clearly wrong and
unjust. Id.

 Points of error four and five challenge the finding of fact that Dunn informed Kaiser and
MSR that she had read the lease and believed paragraph five of the addendum to the lease made it
ambiguous and that the primary term was not extended by an oil well that had been drilled. Before the
closing, Dunn and Kaiser communicated through their mutual real estate agent. After the earnest money
contract had been entered into, Dunn received word that Gallaway had asked Kaiser to sign a new
addendum, which clarified paragraph five and was prepared by the title attorney. Dunn told the real estate
agent that she would not agree to an amendment. Dunn specifically testified that she "wanted it to go as
it was written and as [she] was interpreting it." Testimony further revealed that Dunn knew before the
closing on the property that Kaiser and MSR interpreted paragraph five differently than she did. Dunn
testified that she "knew the possibility that the lease was cancelled when [she] entered into the contract"
because of the wording in paragraph five. She further testified that she hoped for the "opportunity to
negotiate a new lease once [she] bought the . . . property." Conflicting evidence was presented as to when
Dunn informed Gallaway that his lease had lapsed. Gallaway testified that she told him at their initial
meeting in May; Dunn claims she did not tell him to check on the validity of the lease until November. 
Regardless, in Dunn's December 1994 letter to Gallaway, which was introduced into evidence, she stated
that she believed the lease was "automatically cancelled" in May 1994 according to paragraph five. Points
of error four and five are overruled.

 In points of error six and seven, Dunn challenges the evidentiary sufficiency of finding of
fact six. The facts set forth in this finding are that:


Defendant was informed orally, and by letter dated April 18, 1994, by Kenneth Kaiser,
that she was mistaken, and that the intent of the original parties to the lease (Kaiser and
Plaintiff herein) was:


(A) That addendum paragraph (5) was intended to apply only after expiration of the paid
up two (2) year primary term as extended by 120 days for each well drilled during
the primary term;


(B) The original paid up primary term was for two (2) years from June 1, 1993;


(C) The original primary term is extended for 120 days for each well drilled during the
term; and


(D) The primary term of the lease, original or extended, would be continued and extended
so long as there is continuous drilling with no more than 120 days between completion
of one well and commencement of the next.



 Kaiser testified that on the day of the closing he told the real estate agent and Dunn that he
interpreted the lease to provide for a 120-day extension past the point of the two-year period. Dunn
denied that any such statements were made. However, as the sole judge of the credibility of the witnesses,
the trial court was free to believe Kaiser's testimony over Dunn's. Kaiser's April letter, which was
admitted into evidence, provides ample support for the remainder of the finding. Additionally, Gallaway
testified that he interpreted the lease as providing a two-year primary term, with 120-day extensions for
wells drilled during the primary term. Points of error six and seven are overruled.

 Finally, points of error nine and ten question the evidence supporting finding of fact eleven,
which states that any language of the lease that might be interpreted as shortening the original primary term
of the lease was the result of mutual mistake that was proven by the original parties' testimony and written
clarification to Dunn prior to her purchase of the property. During the trial, Kaiser's attorney asked him
if he had ever made any different oral or written representations about his understanding of paragraph five. 
In response, Kaiser testified that, if he had, "it was a mistake because [he] tried to make it very clear that
[he] thought that it was at the end of the primary term that these one hundred and twenty days were to be
added." He added that if there had been other representations, "there was a misinterpretation of what [he]
said because [he] tried to make it very clear of what [he] thought the lease said." Kaiser further testified
that he wanted Dunn to know of his interpretation before the closing took place because he did not want
to become involved in any "disclosure problems." Both Kaiser and Gallaway testified that they did not
intend the primary term to be shortened. Moreover, Dunn received a copy of Kaiser's April letter before
the closing date. Regardless, this finding pertains to the issue of reformation, which MSR raised in the event
that the trial court did not construe the lease in MSR's favor. This finding is not relevant to the trial court's
ultimate decision since it did not base its judgment on reformation. Points of error nine and ten are
overruled.


Attorney's Fees

 In its sole cross-point, MSR argues that it is entitled to attorney's fees pursuant to the
Uniform Declaratory Judgments Act and that the trial court erred in refusing to award them. (4) Through the
testimony of MSR's attorneys who handled the case, MSR presented evidence of its legal fees, including
hourly rates of the attorneys, the number of hours worked, and the fixed rate for certain appeals. The
pertinent section of the Uniform Declaratory Judgments Act, however, provides that "the court may award
costs and reasonable and necessary attorney's fees as are equitable and just." See Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (West 1997) (emphasis added). The grant or denial of attorney fees lies within the
sound discretion of the trial court, and its judgment will not be reversed absent a clear showing that it
abused its discretion. Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 
Merely because a trial judge decided a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of discretion occurred. See City
of Holliday v. Wood, 914 S.W.2d 175, 178 (Tex. App.--Fort Worth 1995, no writ). The trial court was
not obligated to award attorney's fees, and MSR has not demonstrated that the trial court abused its
discretion in refusing to award attorney's fees. MSR's cross-point is overruled.


CONCLUSION


 We have determined that the lease is ambiguous, that the trial court did not err in admitting
evidence of the contracting parties' intent, and that, in light of these intentions, the trial court properly
construed the lease. Consequently, we overrule points of error one, two, three, and eight. Concluding that
the evidence is sufficient to support the challenged findings of fact, we overrule Dunn's remaining points of
error. Because the trial court did not abuse its discretion in refusing to award MSR attorney's fees, we
overrule MSR's cross-point. The judgment of the trial court is affirmed.




 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: February 20, 1998

Do Not Publish
1.   Paragraphs three and five of the Kaiser addendum provided:


3. Lessor and Lessee agree that if a well is drilled on land leased herein within the primary
term, lessee shall earn an additional 120 days on the primary term per well drilled. 


* * * * *


5. Failure to drill a well within 120 days of the completion of a previous well during the
primary lease period shall result in automatic cancellation and forfeiture of this lease,
except as to acreage designated for each producing well as set out above, and Lessee
shall, no later than 30 days after the expiration of the primary term or failure to conduct
drilling operations as set out above, executed [sic] and deliver to Lessor(s) a recordable
release as to the acreage to be released.
2.   Both Kenneth Kaiser and his wife were parties to the agreements; however, because only Kenneth
Kaiser testified at trial, for convenience, he will be referred to as "Kaiser."
3. MSR offered the April letter into evidence, without objection from Dunn, and also requested judicial
notice of the fact that Dunn admitted in a response to a request for admission that the April letter was a
genuine copy of a letter she received.
4. The trial court's judgment does not specifically address this issue, and Dunn did not respond to the
cross-point in her briefing of the case.



ecause he did not want
to become involved in any "disclosure problems." Both Kaiser and Gallaway testified that they did not
intend the primary term to be shortened. Moreover, Dunn received a copy of Kaiser's April letter before
the closing date. Regardless, this finding pertains to the issue of reformation, which MSR raised in the event
that the trial court did not construe the lease in MSR's favor. This finding is not relevant to the trial court's
ultimate decision since it did not base its judgment on reformation. Points of error nine and ten are
overruled.


Attorney's Fees

 In its sole cross-point, MSR argues that it is entitled to attorney's fees pursuant to the
Uniform Declaratory Judgments Act and that the trial court erred in refusing to award them. (4) Through the
testimony of MSR's attorneys who handled the case, MSR presented evidence of its legal fees, including
hourly rates of the attorneys, the number of hours worked, and the fixed rate for certain appeals. The
pertinent section of the Uniform Declaratory Judgments Act, however, provides that "the court may award
costs and reasonable and necessary attorney's fees as are equitable and just." See Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (West 1997) (emphasis added). The grant or denial of attorney fees lies within the
sound discretion of the trial court, and its judgment will not be reversed absent a clear showing that it
abused its discretion. Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 
Merely because a trial judge decided a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of discretion occurred. See City
of Holliday v. Wood, 914 S.W.2d 175, 178 (Tex. App.--Fort Worth 1995, no writ). The trial court was
not obligated to award attorney's fees, and MSR has not demonstrated that the trial court abused its
discretion in refusing to award attorney's fees. MSR's cross-point is overruled.


CONCLUSION