Opinion issued January 20, 2005
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00514-CV




EOG RESOURCES, INC., Appellant

V.

JAY PETROLEUM, L.L.C., Appellee




On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2001-63382




MEMORANDUM OPINIONAppellant, EOG Resources, Inc. (“EOG”), formerly known as Enron Oil and
Gas Co., appeals from a final summary judgment rendered in favor of appellee, Jay
Petroleum, L.L.C. (Jay), on Jay’s claims arising from a purchase and sale agreement
of an interest in oil and gas leases. EOG presents two issues. In its first issue, EOG
contends that rendering final summary judgment in favor of Jay was reversible error
because the trial court incorrectly interpreted the agreement, and because fact issues
remain on all of Jay’s causes of action. In its second issue, EOG contends that Jay
failed to prove that it was entitled to final summary judgment because fact issues
remain on EOG’s counterclaims against Jay for fraud, negligent misrepresentation,
breach of contract, unjust enrichment, and declaratory relief. We reverse and render
judgment in favor of EOG.Background
          Jay, a producer of oil and gas, owned the majority of the working interest and
a royalty interest in certain oil and gas leases and wells located in Jefferson County,
Texas. On October 27, 1998, Jay sold all of its working interest in the leases, and the
personal property on the leases, to EOG through a purchase and sale agreement.


 The
agreement provided that, in exchange for EOG’s payment to Jay of $1 million, EOG
would receive all of Jay’s interest in certain oil and gas leases, except that Jay
reserved from the transfer to EOG and retained for itself an overriding royalty interest
(“reserved interest”) of 2.0425% of 8/8ths net revenue interest in all oil and gas
production from the leases, reduced in proportion to the difference, if any, between
Jay’s actual interest in the leases and the interests Jay purported to own. Jay resigned
as operator and transferred the right to receive and disburse all proceeds of production
to EOG. 
          Early in 2001, EOG reduced the payments to Jay after discovering that a
Maxine Feinberg owned a royalty and overriding royalty interest in the lease
properties. EOG claimed that, because Feinberg claimed a 0.19247% interest in the
leases, to compensate Feinberg, it was necessary to reduce Jay’s overriding royalty
interest. EOG further contended that the discovery of Feinberg’s interest in the leases
increased the actual total lease burdens to 21.10025%, rather than 20.2205%, as
represented in the agreement. 
          From November 1998 to April 2001, EOG distributed a reserved interest of
2.0425% of 8/8ths net revenue interest to Jay, but EOG did not make any
disbursements of money from April 2001 to October 2001. In October 2001, EOG
resumed payments to Jay, but reduced the amount to compensate for the increased
actual lease burdens that resulted from the discovery of Feinberg’s interest in the
leases, to a rate based on a 1.254218% overriding royalty interest in the oil and gas
leases and not based on the original 2.0425%.
          In December, 2001, Jay sued EOG for breach of contract, conversion, unjust
enrichment, exemplary damages and attorney’s fees. EOG answered and filed
counterclaims alleging fraud, breach of contract, negligent misrepresentation, unjust
enrichment, exemplary damages, attorney’s fees, and cloud on the title, and also
requested a declaratory judgment. In its counterclaims, EOG contended that the
agreement provided (1) that Jay must deliver to EOG a 77.5% net revenue interest in
the leases and properties, and (2) that Jay retained an overriding royalty interest
equivalent to 22.5% of production, less the total lease burdens and reduced in
proportion to the difference, if any, between Jay’s actual interest in the leases and the
interests described in Exhibit “A” of the agreement. EOG contends that Jay breached
the agreement by failing to deliver the net revenue interest of 77.5% promised in the
agreement after the lease burdens increased due to the discovery of Feinberg’s
interest in the leases.
          Jay filed a motion for summary judgment contending that its case was “entirely
based upon two very clear, unambiguous documents–a ‘purchase and sale agreement’
and an assignment of oil, gas, and mineral leases and bill of sale. . . .” The relevant
portions of these documents are as follows:
ARTICLE I
PURCHASE AND SALE 
 
1.01 Purchase and Sale. Sellers agree to sell and convey and Buyer
agrees to purchase and pay for the Properties (as defined in Section 1.02
below), subject to the terms and conditions of this Agreement.
 
1.02 Properties. All of Sellers’ right, title and interest in and to the
following (collectively, the “Properties”):
(a) All of the oil, gas and other mineral leases (“Leases”), rights,
privileges, obligations, and properties, including Bank One’s net profits
interest, which are described or referred to in Exhibit “A” attached
hereto. It is understood and agreed that Jay purports to own a 98.22%
working interest in and to the Leases which is subject to a 16.92% net
profits interest owned by Bank One. Sellers shall deliver a 77.5% of
8/8ths net revenue interest in the Leases. Bank One and Jay shall
reserve an overriding royalty interest in the Leases equal to the
difference between 22.5% of 8/8th and the total lease burdens existing
as of the Effective Time hereof (the “Reserved Interest”). The Reserved
Interest of Jay shall equal 2.0425% of 8/8ths net revenue interest,
reduced in proportion to the difference, if any, between Sellers’ actual
interest in the Leases and the interests described on Exhibit “A”.
          . . .
10.10 Conflicts. In the event that any of the terms of this Agreement
conflict or are deemed to conflict with the terms of the assignments
executed pursuant to Section 7.03(a) hereof, the terms of this Agreement
shall prevail at the point of conflict. 

(emphasis added).

          The Assignment (from Jay to EOG) reads as follows:
 
a. Those certain Oil, Gas and Mineral Leases which are further
described on Exhibit “A” attached hereto and incorporated by reference
herein (the “Leases”); SAVE and EXCEPT a 2.0425% (2.0425% of
8/8ths) overriding royalty interest in all oil, gas or other minerals
produced, saved and marketed under the Leases (the “Overriding
Royalty Interest”), which Overriding Royalty Interest is reserved unto
Assignor herein; provided however, that the Overriding Royalty Interest
reserved herein shall be reduced in proportion to the extent, if any, that
Assignor’s actual interest in the Leases is less than a 63.0075% net
revenue interest (63.0075% of 8/8ths); . . . .

(emphasis added). Exhibit “A” is a property description of the 14 leases in Jefferson
County, Texas in which Jay had an interest.
          Jay moved for traditional final summary judgment on its claims, and a no-evidence summary judgment on EOG’s counter-claims; EOG filed a cross-motion for
partial summary judgment. The trial court granted Jay’s motion for final summary
judgment and denied EOG’s cross-motion for partial summary judgment. The trial
court held that Jay was entitled to a fixed 2.0425% overriding royalty interest
(2.0425% of 8/8ths net royalty revenue interest), and ordered that EOG take nothing
in its counterclaims. Summary Judgment
          In its first and second issues, EOG challenges the rule 166(a)(c) summary
judgment rendered in Jay’s favor. EOG contends that the trial court erred by
interpreting the agreement in Jay’s favor and by holding (1) that Jay was entitled to
a fixed overriding royalty interest of 2.0425% of 8/8ths net royalty revenue interest
in the lease interests transferred in section 1.02(a) of the agreement, and (2) that EOG
was not entitled to a conveyance of a fixed 77.5% of 8/8ths net revenue interest. 
EOG further contends that fact issues remain concerning Jay’s causes of action, and
that summary judgment was therefore improper. 
          Under the standard of review for a traditional summary judgment, the moving
party must establish that no material fact issue exists, and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. and
Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In determining whether a
disputed material fact issue precludes summary judgment, the court must take
evidence favorable to the nonmovant as true and indulge every reasonable inference
in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985). If there is no genuine issue of material fact, judgment should issue as
a matter of law. Haase v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001). All evidence
favorable to the nonmovant is taken as true, and we make all reasonable inferences
in the nonmovant’s favor. Id. Because rendition of summary judgment involves a
question of law, we review the trial court’s decision de novo. Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994). When a contract contains an ambiguity, a
trial court errs by granting a motion for summary judgment because the interpretation
of the instrument becomes a fact issue. See Coker v. Coker, 650 S.W.2d 391, 394
(Tex. 1983). But, summary judgment may be proper when a trial court interprets an
unambiguous document. See Bishop v. Nat’l Loan Investors, L.P., 915 S.W.2d 241,
245 (Tex. App.—Fort Worth 1995, writ denied); Lee M. Bass, Inc. v. Shell Western
E & P, Inc., 957 S.W.2d 159, 160 (Tex. App.—San Antonio 1997, no pet.).
          Whether a contract is ambiguous is a question of law for the court to decide. 
See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex.
1980). In construing contracts, we must ascertain and give effect to the parties’
intentions, as expressed in the document. See id. A contract is not ambiguous if it
can be given a certain or definite legal meaning or interpretation. See Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996);
Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996). 
Ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract; for an ambiguity to exist, both interpretations must be
reasonable. See Columbia Gas, 940 S.W.2d at 589; Nat’l Union Fire Ins. Co. v. CBI
Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The court may determine that a
contract is ambiguous even if neither party raises that contention. Coker, 650 S.W.2d
at 393-94 (concluding agreement was ambiguous even though parties affirmatively
asserted it was unambiguous, and trial court and court of appeals agreed it was
unambiguous). When a contract is unambiguous we will enforce it as written. Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 862 (Tex. 2000).
          Here, the parties agree that the oil and gas agreement is unambiguous and that
it can be given a definite legal meaning. The parties’ disagreement concerns
interpretation of the terms of the agreement. By finding no genuine issues of any
material fact, and rendering summary judgment in favor of Jay, the trial court agreed
with Jay’s interpretation of the terms of the contract. 
          It is a basic rule of contract law that when a court is called upon to interpret a
contract, the court will give plain meaning to the words used in the writing. See City
of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518-19 (Tex. 1968). 
Our primary concern in construing a written contract is to ascertain the true intent of
the parties, as expressed in the instrument. Forbau v. Aetna Life Ins. Co., 876 S.W.2d
132, 133 (Tex. 1994); Coker, 650 S.W.2d at 393. In interpreting a written contract
to ascertain the true intentions of the parties, as expressed in the instrument, we must
examine and consider the entire writing in an effort to harmonize and give effect to
all provisions of the contract so that none will be rendered meaningless. Coker, 650
S.W.2d at 393; Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex.
1951). No single provision, taken alone, will be given controlling effect; rather, all
provisions must be considered within the context of the whole instrument. Coker,
650 S.W.2d at 393; Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196
(Tex. 1962).           
          The dispute here concerns the amount of overriding royalty interest that EOG
owed to Jay.


 According to Jay, the agreement states that Jay is entitled to 2.0425%
of the total overriding royalty interest. EOG contends that Jay promised to deliver to
EOG a 77.5% net revenue interest in the leases, and that Jay agreed to a “reserved
interest” in an amount equal to the difference between 22.5% of the net revenue
interest and the total lease burdens existing as of the effective date of the agreement. 
Although EOG acknowledges that the agreement anticipated that Jay’s reserved
interest would be 2.0425% of the net revenue interest, EOG points out that the
agreement also provided that the reserved interest would be reduced in proportion to
the difference, if any, between the actual interest held by Jay and the outstanding
lease burdens. EOG explains that Jay’s reserved interest is smaller than anticipated
in the agreement because the actual lease burdens exceeded the total that Jay had
represented them to be in the agreement. More specifically, EOG contends that the
actual lease burdens were 21.10025% after EOG discovered Feinberg’s interest in the
ownership of the leased properties, and therefore contends that Jay could reserve only
an overriding royalty interest of 1.39975% (22.5% less 21.10025%). EOG thus
contends that the proportionate-reduction provision formula in section 1.02(a) of the
agreement determines the reduced amount of overriding royalty interest that Jay is
entitled to receive. 
          The plain language of the agreement states that Jay “shall deliver” 77.5% net
revenue interest in its working interest in the leases that it sold to EOG. The
agreement further provides that Jay reserved an overriding royalty interest in the
leases equal to the difference between 22.5% of the leases and the total lease burdens
existing as of the effective time of the agreement. Neither EOG nor Jay has asserted
in this appeal that Feinberg’s interests did not exist as of the effective date of the
agreement; the only assertion is that Feinberg’s interests were undiscovered and
unknown to either Jay or EOG at the time of the agreement. Because Feinberg’s
interests constituted a lease burden existing as of the effective date of the agreement,
EOG is entitled to reduce, from Jay’s overriding royalty interest of 22.5%, the lease
burdens due to Feinberg’s interest. The existence of an interest like Feinberg’s was
contemplated in the parties’ agreement, which plainly states that Jay “shall deliver”
77.5% net revenue interest in its working interest in the leases that it sold to EOG and
that any lease burdens existing as of the effective time of the agreement, such as the
interest that Feinberg held, would be subtracted from Jay’s reserved overriding
royalty interest of 22.5%.
          The agreement further provides that Jay’s reserved interest shall equal 2.0425% 
of the total net revenue interest, reduced in proportion to the difference, if any,
between Jay’s actual interest in the leases and the known interests described in
Exhibit “A.” Jay was thus entitled to 2.0425% of the total net revenue interest minus
the difference between Jay’s actual interest in the leases and the known interests
described on the exhibit. Feinberg’s lease burdens were not listed as a known interest
in Exhibit “A” because it is undisputed that she was undiscovered and unknown to
both Jay and EOG at the time the agreement was signed. Although she was unknown,
she did exist. Because Feinberg had an interest in the leases, Jay’s actual interest was
reduced by her interest. Thus, a plain reading of the agreement provides that Jay is
entitled to 2.0425% of the total net revenue interest, reduced in proportion to the
difference between Jay’s actual interest in the leases, which was reduced by
Feinberg’s interest in the leases, and the known interests described on Exhibit “A.” 
          The assignment provides that the reserved overriding royalty interest shall be
reduced in proportion to the extent, if any, that Jay’s actual interest in the leases is
less than a 63.0075% of the total net revenue interest. Thus, the assignment also
referred to Jay’s actual interest in the leases, from which Feinberg’s interest in the
leases must be excluded. The language in the assignment is consistent with the
agreement, and both explain that there is to be a proportionate reduction of Jay’s
overriding royalty interest based on Jay’s actual interests in the leases. Moreover,
even if the terms of the assignment conflicted with the agreement, the agreement
specifies that its terms “shall prevail at the point of conflict.”
          We can give the controlling agreement in this case a definite and certain legal
meaning because, after applying the applicable rules of construction, it is clear that,
in section 1.02(a) of the agreement, Jay promised to deliver to EOG an absolute and
fixed 77.5% net revenue interest in the leases. Jay reserved an overriding royalty
interest in the leases equal to the difference between 22.5% of the leases and the total
lease burdens existing as of the effective time of the agreement, including Feinberg’s
interest, which, although unknown, existed when EOG and Jay entered into the
agreement. The proportionate-reduction provision of the agreement further shows
that Jay is not entitled to a fixed 2.0425% reserved interest, but that Jay’s reserved
interest must be reduced in proportion to the difference between Jay’s actual interest
in the leases, which were reduced by Feinberg’s interest in the leases, and the
interests listed in Exhibit “A.” Because the contract language here can be given a
definite meaning and is not reasonably susceptible to more than one meaning, it is
clear and unambiguous, and we will enforce it as written. See Lopez, 22 S.W.3d at
861-62. 
          We therefore hold, as a matter of law, that Jay represented it would deliver to
EOG a 77.5% of 8/8ths net revenue interest in the lease properties; therefore, EOG
is entitled to a fixed 77.5% of 8/8ths net revenue interest in the lease properties. We
further hold that Jay’s reserved interest of 2.0425% was conditional and subject to
any existing, although unknown, lease burdens. Due to discovery of Feinberg’s
interest, Jay’s overriding royalty interest must be reduced according to the
proportionate-reduction provision of the agreement. The trial court erred by granting
Jay’s motion for final summary judgment on its breach of contract and conversion
claims, and by denying EOG’s motion for partial summary judgment.
          Accordingly, we reverse and render judgment for EOG.
          Because our ruling is dispositive of the appeal, we need not address EOG’s
remaining arguments.
 
 
 
 
Conclusion
          We reverse the trial court’s judgment and render judgment in favor of EOG. 
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.