Mac L. COKER, Jr., Petitioner,

v.

Frances Kincaid COKER, Respondent.

No. C–1728.

Supreme Court of Texas.

May 4, 1983.

Rehearing Denied June 8, 1983.

Akin, Gump, Strauss, Hauer & Feld, Emil Lippe, Jr. and Ruth Abboud Cross, Dallas, for petitioner.

Neal & McBeath, Bill Neal and Marc McBeath, Vernon, for respondent.

BARROW, Justice.

This suit was brought by Frances Kincaid Coker (Frances) against her former husband, Mac L. Coker, Jr. (Mac), on a property settlement agreement incorporated into their divorce decree. The decree awarded Frances a real estate commission previously earned by Mac from the sale of certain ranch property. The seller of the property was to pay the commission in seven annual installments as payments were made by the purchaser. After Frances received payments totaling $14,317.16, the purchaser defaulted and no further commissions were receivable. The question presented here is whether Mac agreed to pay Frances a minimum of $25,000 or whether Frances was assigned all of Mac's interest in the commissions to be paid by the seller in this particular transaction.

Both parties asserted that the property settlement agreement was unambiguous and each moved for a favorable summary judgment. The trial court construed the agreement as one of guaranty and rendered summary judgment that Frances recover the sum of $10,682.84 from Mac. The court of appeals affirmed in an unpublished opinion. Tex.R.Civ.P. 452. We reverse the judgments of the courts below and remand the cause to the trial court.

The parties were divorced on September 24, 1971 after being married about ten years. They had accumulated community property consisting of a 1969 Buick automobile, two Dallas Cowboy seat options, unpaid real estate commissions earned by Mac

while employed as a broker for the real estate firm of Majors & Majors and certain personal effects. The parties entered into a property settlement agreement which was approved by the trial court and incorporated into the divorce decree. The decree provides in relevant part:

IT IS THEREFORE FURTHER ORDERED, ADJUDGED AND DECREED that Petitioner Frances Kincaid Coker have and she hereby is awarded as her sole and separate property one 1969 Buick automobile, Serial No. *4443792127816,* all household goods and personal possessions now in her possession or located at her place of residence, one Texas Stadium Bond along with season ticket sold in connection therewith, *and those certain commissions and accounts receivable heretofore earned by husband during his employment with the firm of Majors and Majors in connection with the sale of the "Jinkens Ranch property in Tarrant County, Texas";* that Respondent have and he hereby is awarded as his sole and separate property one Texas Stadium Bond along with season ticket sold in connection therewith, all personal effects in his possession and those certain commissions or accounts receivable owing to him from Majors and Majors being the monthly commissions on leases negotiated while Respondent was in the employment of Majors and Majors. (emphasis added).

The property settlement agreement provides in part:

5. Wife shall receive as her sole and separate property, free and clear of any claim, right or title of husband, the following described property: one 1969 Buick automobile, serial no. *4443792127816,* all household goods and personal possessions now in the wife's possession or located at her place of residence, (except that the husband shall receive one bedroom suite now located in Crowell, Texas), and one Texas Stadium bond, free of all indebtedness, along with the season ticket sold in connection therewith. *The wife shall further have as her sole and separate property, free and clear*

of all claim, right or title asserted by husband, *that certain right, commission or account receivable heretofore earned by husband during his employment with the firm of Majors & Majors in connection with the sale of the "Jinkens ranch property in Tarrant County, Texas,"* such future commission or account receivable being in the approximate sum of $25,000.00.

. . . .

8. Husband represents and warrants to the wife that, to the best of his knowledge, approximately $25,000.00 remains due and owing to him as his portion of commissions earned in connection with the sale of the "Jinkens property in Tarrant County, Texas," and he hereby guarantees to wife that she will receive the said sum of $25,000.00, from Majors & Majors, or from any other payor of such commissions receivable. *Such commission is payable to her as payments are made by purchasers to sellers,* and will normally be received by her through the office of Majors & Majors. In the event, for any reason she fails to receive such installments of commission exactly as husband would have prior to his assignment of his rights thereto to wife, *husband agrees to pay to wife in Dallas County, Texas all such sums of money, which she has failed to receive, up to the guaranteed sum of $25,000.00.* (emphasis added).

The parties thereby agreed that Mac would keep his rights to the monthly commissions earned on leases he had negotiated and Frances would be assigned the commission earned by Mac from the sale of the "Jinkens ranch property in Tarrant County." Prior to the divorce, Mac had participated in the sale of the Jinkens ranch whereby he would receive 40% of the sales commission payable by the seller to Majors & Majors over a seven year period contingent on the annual payments being made by the purchaser. In 1976, however, the purchaser defaulted and according to the terms of the sales contract, the seller was not required to continue payments of the commission. Therefore, Mac's rights in the commission were terminated.

Frances admitted that she had received all the commission payable to Mac prior to default, but she contends that under the property settlement agreement she was to receive a minimum of $25,000. The trial court and the court of appeals agreed with Frances. We must attempt to construe this contract and determine the intent of the parties as shown by the written instruments.

■ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat'l Bank in Abilene v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms. *Ogden v. Dickinson State Bank,* 26 Tex.Sup.Ct.J. 200, 202 (Jan. 26, 1983).

■ If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Universal C.I.T. Credit Corp.,* 243 S.W.2d at 157; *R & P Enterprises,* 596 S.W.2d at 519. A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Skelly Oil Co. v. Archer,* 163 Tex.

336, 356 S.W.2d 774, 778 (1962). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *R & P Enterprises*, 596 S.W.2d at 518. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes ·a fact issue. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1980).

The court of appeals determined that Mac had absolutely guaranteed the payment of $25,000 to Frances. Although the court of appeals recognized that the liability of a guarantor is generally measured by the liability of the principal, it held that paragraph 8 of the settlement agreement created a broader obligation than the commission sales agreement. This interpretation conflicts with paragraph 5 of the agreement and the language used in the divorce decree.

According to the rules of construction, paragraph 8 must be considered along with paragraph 5 and the underlying circumstances to ascertain the true intention of the parties. *See City of Pinehurst*, 432 S.W.2d at 518, 519. The court of appeals failed to fully consider paragraph 5 of the agreement which clearly states that Mac only assigned that "certain right, commission or account receivable heretofore earned by husband." Also, the language of the divorce decree supports an interpretation only assigning Mac's interest in the commission.

 When the language in paragraph 8 is considered alone and particularly the last sentence thereof, the meaning is unclear. The provision could be construed as

a guarantee by Mac that Frances would receive $25,000 or merely a promise that he would not interfere with the payments made by Majors & Majors to her after they received the commission from the seller. If we construe the agreement as a contract of guaranty, any uncertainty must be resolved in favor of Mac as guarantor.[1] Even if we conclude the rules of guaranty do not apply, we could not say with certainty that Mac promised to pay Frances $25,000 regardless of the payment of the commission. Such an interpretation would render the provisions in the divorce decree and paragraph 5 relating to the assignment of the commission surplusage. Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless. *See Odgen*, 26 Tex.Sup.Ct.J. at 202; *Portland Gasoline Co. v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951).

 The divorce decree and paragraph 5 state what interest is assigned to Frances. Unless paragraph 8 is construed to merely set out the manner in which Frances would receive the annual payments, this paragraph conflicts with paragraph 5 and the divorce decree. This conflict creates an ambiguity· as to the intent of the parties as expressed in the written agreement and the decree.

The court of appeals held the provisions of the *property settlement agreement* unambiguously required Mac to pay Frances $25,000 regardless of whether the commissions were in fact paid by the purchaser. This construction conflicts with paragraph 5 as well as the divorce decree. Therefore, this agreement is ambiguous and the trial court erred in granting summary judgment. The trier of fact must resolve the ambigui-

1. A guarantor is entitled to have his agreement strictly construed so that it is limited to his undertakings, and it will not be extended by construction or implication. *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex.1978); *McKnight v. Virginia Mirror Co.*, 463 S.W.2d 428, 430 (Tex.1971); *Southwest Savings Association v. Dunagan*, 392 S.W.2d· 761, 766 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). Where uncertainty exists as to the

meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor. *Commerce Savings Assoc. v. GGE Management Co.*, 539 S.W.2d 71, 78 (Tex.Civ.App.—Houston [1st Dist.] 1976) *modified and affirmed with per curiam*, 543 S.W.2d 862 (Tex.1976); *Walter E. Heller & Co. v. Allen*, 412 S.W.2d 712, 721 (Tex.Civ.App.— Tyler 1967, writ ref'd n.r.e.).

ty by determining the true intent of the parties. *Trinity Universal Ins. Co. v. Ponsford Bros.,* 423 S.W.2d 571, 575 (Tex.1968).

We reverse the judgments of the courts below and remand the cause to the trial court.

SPEARS, J., dissents in which POPE, C.J., and RAY and ROBERTSON, JJ., join.

SPEARS, Justice, dissenting.

I respectfully dissent.

I do not believe that the property settlement agreement entered into by the Cokers is ambiguous. If a written instrument can be given a definite interpretation, it is not ambiguous and the court will construe the contract as a matter of law. *R & P Enterprises v. La Guarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980).

The majority correctly states that the primary objective in the interpretation of contracts is to give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. La Guarta, Gavrel & Kirk, Inc.,* 596 S.W.2d at 518; *Citizens National Bank in Abilene v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1944). Also, the court must consider the entire instrument so that none of the provisions will be rendered meaningless. *R & P Enterprises,* 596 S.W.2d at 519; *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962).

By applying these rules of construction and looking at the contract as a whole, we see the clear, unambiguous meaning of the words used. It is obvious to me that Frances was to receive a minimum of $25,000. The divorce decree awarded her "those certain commissions and accounts receivable *heretofore earned* by husband . . . ." (emphasis added). Paragraph five of the property settlement provides that Frances shall have as her separate property "that certain right, commission or account receivable *heretofore earned* by husband . . . ." (emphasis added).

In the first sentence of paragraph eight, Mac unconditionally represented and warranted that the "Jinkins property" commis-

sion was due and owing to him. He then assigned the commission to Frances and "guaranteed" receipt by her of $25,000. While it is true that the payments of the commission were due only so long as payments on the purchase of the property were made, and upon default no commission would be paid, this limitation is not incorporated in nor alluded to in the agreement setting forth his obligation to pay his wife the $25,000. In fact, the agreement is quite to the contrary.

The third sentence of paragraph eight provides:

"In the event, *for any reason* she fails to receive such installments of commission *exactly as Husband would have prior to this assignment* of his rights thereto to Wife, Husband agrees to pay Wife in Dallas County, Texas all such sums of money, which she has failed to receive, *up to the guaranteed sum* of $25,000.00." (emphasis added).

When this statement is construed with the other provisions of the agreement it is clear that Mac *guaranteed* that Frances would receive $25,000 regardless of what might happen to the commission. The sentence is a directional provision indicating when and how she is to receive the payments. No other provision in the contract pointed to by the majority negates this guarantee; rather, all other provisions are consistent with it. Mac "warranted" the commission was due him and he "guaranteed" the sum of $25,000 would be paid to his ex-wife. In other words, Mac guaranteed that Frances would receive approximately $25,000 from Majors & Majors or any other payor. He further promised that if she failed to receive these payments as he would have prior to assignment directly from the third party payors, he would pay the balance up to $25,000.

Mac's guarantee is unqualified and expresses no other condition for its enforceability than default of performance by the principal obligor. It should be treated, therefore, as the guaranty of payment that it is. An unconditional guaranty for payment becomes a primary obligation upon

default. *See Ferguson v. McCarrell,* 588 S.W.2d 895 (Tex.1979); *Universal Metal & Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877 (Tex.1976).

The majority curiously finds ambiguity in the words "guarantee," "for any reason," "agrees to pay wife," "all such sums of money which she failed to receive," and "up to the guaranteed sum of $25,000." No draftsman could have made it any plainer. The finding of an ambiguity in this language, which is neither negated nor qualified elsewhere in the contract, expressly or impliedly, is without justification.

I would, therefore, affirm the judgment of the court of appeals, and hold that Mac agreed to pay Frances the $25,000, and that she is entitled to recover the balance of $10,682.84 from him.

POPE, C.J., and RAY and ROBERTSON, JJ., join in this dissent.