TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00482-CV








Danny Davis, Appellant



v.



American Bank of Commerce, Appellee









FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN303789, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 Danny Davis appeals from the trial court's grant of summary judgment in favor of
American Bank of Commerce (the Bank). Davis and El Dorado Bar and Grill, Inc. (El Dorado), a
failed restaurant of which Davis was president, owed multiple debts to the Bank. This case turns on
whether all of the debts were forgiven by a mutual release agreement (the Release), or whether a
$500,000 note remained outstanding. The trial court granted summary judgment in favor of the
Bank, holding that the $500,000 note was outside the scope of the Release. Because we hold that
the Release is ambiguous as to its scope, we reverse and remand for further proceedings.

BACKGROUND


 In 2000, Davis became guarantor on an $887,000 promissory note previously made
by Craig Gatewood and El Dorado. The note was secured by a leasehold deed of trust against the
restaurant. El Dorado entered into a second promissory note with the Bank for $50,000, and opened
a checking account with the Bank as well. In 2002, the Bank loaned $500,000 to Davis individually,
secured by Davis's interest in a hedge fund investment.

 The restaurant was not a long-term success. The Bank began foreclosure on El
Dorado in May 2003 after it defaulted on the $887,000 note. The $50,000 note was in default as
well, and there was a debt relating to the checking account. (1) On September 1, 2003, Davis's
$500,000 individual note came due.

 On September 5, the Bank, El Dorado, Gatewood, and Davis entered into the Release,
which contained various boilerplate clauses. The primary release paragraph reads:


 1. Mutual Release: Lender [the Bank], Debtor [El Dorado], Borrower [Gatewood],
and Guarantor [Davis] do hereby release, remise, acquit and forever discharge
each other . . . from any and all liabilities, claims, losses, costs and expenses,
demands, and causes of action whatsoever.



In incorporated preamble paragraphs, the Release specifically lists the $887,000 note, the $50,000
note, and the checking account. The preamble also observes that "certain disputes exist between the
parties and certain debts remain outstanding[,]" and states that "the parties desire to settle said
disputes without resort to litigation." Later that same month, the Bank filed the present suit seeking
declaratory judgment recognizing Davis's continuing liability on the $500,000 note. Davis argued
that the Bank had waived its claim by including the $500,000 note in the Release.

 The Bank and Davis advance opposite interpretations of the scope of the Release. 
The Bank points to the Release's preamble paragraphs, which specifically reference the $887,000
note, the foreclosure and sale of collateral stemming from the default on that note, the $50,000 note,
and the checking account. The Bank contends that the inclusion of these details limits the scope of
the Release to exclude other debts not listed. Within the four corners of the Release, the $500,000
note is not mentioned, and therefore the Bank asserts that the broad waiver of "any and all liabilities
. . . whatsoever" would not include that note. On the other hand, Davis argues that the preamble's
broadly worded reference to "certain disputes . . . and certain debts" properly includes the $500,000
note, and so that debt is waived by the broad language releasing all parties "from any and all
liabilities . . . and causes of action whatsoever."

 The district court, without explanation, granted the Bank's motion for summary
judgment and entered a final judgment in the Bank's favor that included unpaid principal on the note,
interest, and attorney's fees--a total of $597,067.95. This appeal followed.


STANDARD OF REVIEW


 We review a grant of summary judgment de novo. Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994). To prevail, the party seeking summary judgment must establish that
no genuine issue of material fact exists, making judgment appropriate as a matter of law. Tex. R.
Civ. P. 166a(c); see also Rhone-Poulec, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). We will
allow reasonable inferences and take as true all evidence in favor of the nonmovant. Rhone-Poulec,
997 S.W.2d at 223.


ANALYSIS


 We are called upon to determine whether the $500,000 note between Davis and the
Bank is within the scope of the Release. Applying the relevant rules of construction and making
every reasonable inference in the nonmovant's favor, we find that the specific reference to three
debts, followed by vague language referring to "certain disputes" and mentioning that "certain debts
remain outstanding," creates an ambiguity as to the scope of the Release.

 A release is a contract, and as such is subject to the same rules of construction. 
Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). When construing a written contract, our first
priority is to give effect to the intent of the parties as expressed in the instrument. See J.M.
Davisdon, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); National Union Fire Ins. Co. of
Pittsburgh, PA v. CBI, 907 S.W.2d 517, 520 (Tex. 1995). We consider the entire writing and all
provisions thereof, so as to render no single provision meaningless. Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983). Neither will any single provision control our interpretation; instead, all
provisions will be considered in reference to the whole. Id.

 When a contract is ambiguous, summary judgment is inappropriate. Id. at 394. A
contract is ambiguous if it is amenable to more than one reasonable interpretation. See National
Union Fire, 907 S.W.2d at 520. A contract is unambiguous, on the other hand, if it can be given one
certain or definite legal interpretation. Coker, 650 S.W.2d at 393. The existence of ambiguity is a
matter of law for the court to decide by looking at the agreement as a whole in light of the
circumstances present when the contract was entered. Id. at 394.

 The broadly written phrases on which Davis relies read as follows:


WHEREAS, certain disputes exist between the parties and certain debts remain
outstanding; and


WHEREAS, the parties desire to settle said disputes without resort to litigation;


* * *


1. Mutual Release: . . . Lender, Borrower, Guarantor, and Craig Gatewood warrant
that this mutual release is intended to be of the broadest nature and to be
dispositive of all matters involving them, known or unknown.



We find instructive three cases construing the scope of releases containing broad language similar
to the Release between Davis and the Bank. Most relevant is Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931 (Tex. 1991), which held that as broadly written as a release may be, a claim must
be "mentioned" to be effectively released. Brady, 811 S.W.2d at 938. Even claims existing when
the release is executed will not be discharged if they are not clearly within the subject matter of the
release. Id.

 In the present case, the Release clearly mentions three claims, placing them squarely
within its scope: the $877,000 note, the $50,000 note, and the debt related to the checking account. 
Examining the Release as a whole and the circumstances present when Davis and the Bank entered
into the agreement, we find two cognizable readings of the Release. On one hand, the $500,000 note
is not mentioned explicitly, even though three debts, including the significantly smaller $50,000
note, are listed. (2) The Bank relies on Brady to insist that because the Release lacks a specific
enumeration of the $500,000 note, that note is not mentioned, and therefore is not released. Indeed,
the release instrument in Brady specifically enumerates a disputed debt, much like the present
Release. We find the Bank's interpretation to be one reasonable construction of the Release.

 On the other hand, Davis argues that the phrases "certain disputes," "certain debts
remain outstanding," and "all matters involving them, known or unknown" suffice to mention any
and all debts between the parties, including the $500,000 note. He emphasizes that the $500,000
note came due four days before the Release was signed, and as such was a debt to the Bank that
"remained outstanding." Davis also relies on the broad language of the Release, which is similar to
the broad language of the release in Brady. Id. In reviewing a grant of summary judgment, we must
indulge appellant's reasonable inferences. Rhone-Poulec, 997 S.W.2d at 223. Doing so, we
conclude that Davis also presents a reasonable construction of the Release.

 Given that the Release is susceptible to more than one reasonable interpretation, we
cannot determine as a matter of law the intent of the parties; consequently, the release is ambiguous. 
Construction of an ambiguous contract is a matter for the finder of fact, and summary judgment is
inappropriate. See Coker, 650 S.W.2d at 394.

 Davis argues that two supreme court cases dictate that we find the Release to be
unambiguous in his favor. See Memorial Med. Ctr. of East Texas v. Keszler, 943 S.W.2d 433, 434-35 (Tex. 1997); Keck, Mahin & Cate v. National Union Fire Ins. Co., 20 S.W.3d 692, 697-98 (Tex.
2000). We disagree, and find that neither Keszler nor Keck alter the application of Brady to the
present case. In Keszler, the court found that a physician's claim against a hospital for exposure to
a particular chemical was discharged by language purporting to release all claims "relating to
[Keszler's] relationship with [Memorial]." Keszler, 943 S.W.2d at 435. Because the exposure
related to the relationship between the parties, that claim was mentioned. Nor does Keck change our
analysis. The court in Keck noted that the release referenced all claims directly or indirectly
attributable to the period between June 1, 1988 and April 1, 1992. See Keck, 20 S.W.3d at 697. By
mentioning that time period, the release effectively discharged all malpractice claims during the
period described, but not those arising later.

 We further note that in Keszler, the court points out that neither party claimed
ambiguity, and in Keck, the court does not discuss ambiguity at all. See Keszler, 943 S.W.2d at 434;
see also Keck, 20 S.W.3d at 692-706. Here, both parties have argued in the alternative that the
Release is ambiguous.


CONCLUSION


 Because there are conflicting constructions of the scope of the Release, both of which
are reasonable under a summary judgment standard, the Release is ambiguous. We therefore reverse
the lower court's summary judgment and remand for further proceedings consistent with this
decision. Because we reverse and remand on the construction of the contract, we also reverse the
trial court's award of attorney's fees.



 

 Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Reversed and Remanded

Filed: June 23, 2005

1. The record does not make clear the type and amount of debt relating to the checking
account. There seems to be no dispute that El Dorado owed some debt on the account, and that it
was forgiven by the Release.
2. Under the maxim of expressio unius est exclusio alterius, the inclusion in a contract of
certain members of a class implies the exclusion of other members of that class. See First Nat'l
Bank of Luling v. Nugent, 384 S.W.2d 224, 226 (Tex. Civ. App.--San Antonio 1964, writ ref'd
n.r.e.). A supreme court case examining the maxim treats it as not conclusive in a summary
judgment case, but useful when reviewing for an issue of fact. See CKB & Assocs., Inc. v. Moore
McCormack Petroleum, Inc., 734 S.W.2d 653, 655 (Tex. 1987). Though not conclusive, the maxim
provides another reason to find reasonable a construction of the Release which excludes the
$500,000 debt.