# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00482-CV

**Danny Davis, Appellant**

**v.**

**American Bank of Commerce, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN303789, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Danny Davis appeals from the trial court's grant of summary judgment in favor of American Bank of Commerce (the Bank). Davis and El Dorado Bar and Grill, Inc. (El Dorado), a failed restaurant of which Davis was president, owed multiple debts to the Bank. This case turns on whether all of the debts were forgiven by a mutual release agreement (the Release), or whether a $500,000 note remained outstanding. The trial court granted summary judgment in favor of the Bank, holding that the $500,000 note was outside the scope of the Release. Because we hold that the Release is ambiguous as to its scope, we reverse and remand for further proceedings.

## BACKGROUND

In 2000, Davis became guarantor on an $887,000 promissory note previously made by Craig Gatewood and El Dorado. The note was secured by a leasehold deed of trust against the restaurant. El Dorado entered into a second promissory note with the Bank for $50,000, and opened a checking account with the Bank as well. In 2002, the Bank loaned $500,000 to Davis individually, secured by Davis's interest in a hedge fund investment.

The restaurant was not a long-term success. The Bank began foreclosure on El Dorado in May 2003 after it defaulted on the $887,000 note. The $50,000 note was in default as well, and there was a debt relating to the checking account.[1] On September 1, 2003, Davis's $500,000 individual note came due.

On September 5, the Bank, El Dorado, Gatewood, and Davis entered into the Release, which contained various boilerplate clauses. The primary release paragraph reads:

1. Mutual Release: Lender [the Bank], Debtor [El Dorado], Borrower [Gatewood], and Guarantor [Davis] do hereby release, remise, acquit and forever discharge each other . . . from any and all liabilities, claims, losses, costs and expenses, demands, and causes of action whatsoever.

In incorporated preamble paragraphs, the Release specifically lists the $887,000 note, the $50,000 note, and the checking account. The preamble also observes that "certain disputes exist between the parties and certain debts remain outstanding[,]" and states that "the parties desire to settle said

---

[1] The record does not make clear the type and amount of debt relating to the checking account. There seems to be no dispute that El Dorado owed some debt on the account, and that it was forgiven by the Release.

2

disputes without resort to litigation." Later that same month, the Bank filed the present suit seeking declaratory judgment recognizing Davis's continuing liability on the $500,000 note. Davis argued that the Bank had waived its claim by including the $500,000 note in the Release.

The Bank and Davis advance opposite interpretations of the scope of the Release. The Bank points to the Release's preamble paragraphs, which specifically reference the $887,000 note, the foreclosure and sale of collateral stemming from the default on that note, the $50,000 note, and the checking account. The Bank contends that the inclusion of these details limits the scope of the Release to exclude other debts not listed. Within the four corners of the Release, the $500,000 note is not mentioned, and therefore the Bank asserts that the broad waiver of "any and all liabilities . . . whatsoever" would not include that note. On the other hand, Davis argues that the preamble's broadly worded reference to "certain disputes . . . and certain debts" properly includes the $500,000 note, and so that debt is waived by the broad language releasing all parties "from any and all liabilities . . . and causes of action whatsoever."

The district court, without explanation, granted the Bank's motion for summary judgment and entered a final judgment in the Bank's favor that included unpaid principal on the note, interest, and attorney's fees—a total of $597,067.95. This appeal followed.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). To prevail, the party seeking summary judgment must establish that no genuine issue of material fact exists, making judgment appropriate as a matter of law. Tex. R. Civ. P. 166a(c); *see also Rhone-Poulec, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We will

allow reasonable inferences and take as true all evidence in favor of the nonmovant. *Rhone-Poulec*, 997 S.W.2d at 223.

**ANALYSIS**

We are called upon to determine whether the $500,000 note between Davis and the Bank is within the scope of the Release. Applying the relevant rules of construction and making every reasonable inference in the nonmovant's favor, we find that the specific reference to three debts, followed by vague language referring to "certain disputes" and mentioning that "certain debts remain outstanding," creates an ambiguity as to the scope of the Release.

A release is a contract, and as such is subject to the same rules of construction. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). When construing a written contract, our first priority is to give effect to the intent of the parties as expressed in the instrument. *See J.M. Davisdon, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI*, 907 S.W.2d 517, 520 (Tex. 1995). We consider the entire writing and all provisions thereof, so as to render no single provision meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Neither will any single provision control our interpretation; instead, all provisions will be considered in reference to the whole. *Id.*

When a contract is ambiguous, summary judgment is inappropriate. *Id.* at 394. A contract is ambiguous if it is amenable to more than one reasonable interpretation. *See National Union Fire*, 907 S.W.2d at 520. A contract is unambiguous, on the other hand, if it can be given one certain or definite legal interpretation. *Coker*, 650 S.W.2d at 393. The existence of ambiguity is a

4

matter of law for the court to decide by looking at the agreement as a whole in light of the circumstances present when the contract was entered. *Id.* at 394.

The broadly written phrases on which Davis relies read as follows:

> WHEREAS, certain disputes exist between the parties and certain debts remain outstanding; and
>
> WHEREAS, the parties desire to settle said disputes without resort to litigation;
>
> \* \* \*
>
> 1.   Mutual Release: . . . Lender, Borrower, Guarantor, and Craig Gatewood warrant that this mutual release is intended to be of the broadest nature and to be dispositive of all matters involving them, known or unknown.

We find instructive three cases construing the scope of releases containing broad language similar to the Release between Davis and the Bank. Most relevant is *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex. 1991), which held that as broadly written as a release may be, a claim must be "mentioned" to be effectively released. *Brady*, 811 S.W.2d at 938. Even claims existing when the release is executed will not be discharged if they are not clearly within the subject matter of the release. *Id.*

In the present case, the Release clearly mentions three claims, placing them squarely within its scope: the $877,000 note, the $50,000 note, and the debt related to the checking account. Examining the Release as a whole and the circumstances present when Davis and the Bank entered into the agreement, we find two cognizable readings of the Release. On one hand, the $500,000 note is not mentioned explicitly, even though three debts, including the significantly smaller $50,000

5

note, are listed.[2]  The Bank relies on *Brady* to insist that because the Release lacks a specific enumeration of the $500,000 note, that note is not mentioned, and therefore is not released.  Indeed, the release instrument in *Brady* specifically enumerates a disputed debt, much like the present Release.  We find the Bank's interpretation to be one reasonable construction of the Release.

On the other hand, Davis argues that the phrases "certain disputes," "certain debts remain outstanding," and "all matters involving them, known or unknown" suffice to mention any and all debts between the parties, including the $500,000 note.  He emphasizes that the $500,000 note came due four days before the Release was signed, and as such was a debt to the Bank that "remained outstanding."  Davis also relies on the broad language of the Release, which is similar to the broad language of the release in *Brady*. *Id.*  In reviewing a grant of summary judgment, we must indulge appellant's reasonable inferences.  *Rhone-Poulec*, 997 S.W.2d at 223.  Doing so, we conclude that Davis also presents a reasonable construction of the Release.

Given that the Release is susceptible to more than one reasonable interpretation, we cannot determine as a matter of law the intent of the parties; consequently, the release is ambiguous.  Construction of an ambiguous contract is a matter for the finder of fact, and summary judgment is inappropriate.  *See Coker*, 650 S.W.2d at 394.

---

[2] Under the maxim of *expressio unius est exclusio alterius*, the inclusion in a contract of certain members of a class implies the exclusion of other members of that class.  *See First Nat'l Bank of Luling v. Nugent*, 384 S.W.2d 224, 226 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.).  A supreme court case examining the maxim treats it as not conclusive in a summary judgment case, but useful when reviewing for an issue of fact.  *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987).  Though not conclusive, the maxim provides another reason to find reasonable a construction of the Release which excludes the $500,000 debt.

6

Davis argues that two supreme court cases dictate that we find the Release to be unambiguous in his favor. *See Memorial Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433, 434-35 (Tex. 1997); *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 697-98 (Tex. 2000). We disagree, and find that neither *Keszler* nor *Keck* alter the application of *Brady* to the present case. In *Keszler*, the court found that a physician's claim against a hospital for exposure to a particular chemical was discharged by language purporting to release all claims "relating to [Keszler's] relationship with [Memorial]." *Keszler*, 943 S.W.2d at 435. Because the exposure related to the relationship between the parties, that claim was mentioned. Nor does *Keck* change our analysis. The court in *Keck* noted that the release referenced all claims directly or indirectly attributable to the period between June 1, 1988 and April 1, 1992. *See Keck*, 20 S.W.3d at 697. By mentioning that time period, the release effectively discharged all malpractice claims during the period described, but not those arising later.

We further note that in *Keszler*, the court points out that neither party claimed ambiguity, and in *Keck*, the court does not discuss ambiguity at all. *See Keszler*, 943 S.W.2d at 434; *see also Keck*, 20 S.W.3d at 692-706. Here, both parties have argued in the alternative that the Release is ambiguous.

## CONCLUSION

Because there are conflicting constructions of the scope of the Release, both of which are reasonable under a summary judgment standard, the Release is ambiguous. We therefore reverse the lower court's summary judgment and remand for further proceedings consistent with this

7

decision.  Because we reverse and remand on the construction of the contract, we also reverse the trial court's award of attorney's fees.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Reversed and Remanded

Filed:   June 23, 2005