Opinion filed June 17,
2010

 

 

                                                                      
In The

                                                                             


  Eleventh
Court of Appeals

                                                                  
__________

 

                                                        
No. 11-08-00289-CV

                                                   
__________

 

                       
JIM HILL AND GARY HORTON, Appellants

 

                                                            
V.

 

RON BOULLY, MARK WOMACK, MEL WOODRUFF, JIMMY CLYDE
HARMON, PATRICIA ANN HARRELL,

 AND SPORTSMAN’S WORLD RANCH OWNERS’ ASSOCIATION,
INC., Appellees



 

                                  
On Appeal from the 29th District Court

 

                                                        
Palo Pinto County, Texas

 

                                                   
Trial Court Cause No. C42014

 



 

M
E M O R A N D U M   O P I N I O N

           
This appeal arises from a declaratory judgment involving the construction of
(1) a declaration of covenants, conditions, and restrictions and (2) corporate
bylaws.  Upon construing the applicable provisions of the declaration and
bylaws, the trial court rendered judgment against Jim Hill and Gary Horton and
in favor of Ron Boully, Mark Womack, Mel Woodruff, Jimmy Clyde Harmon, Patricia
Ann Harrell, and Sportsman’s World Ranch Owners’ Association, Inc.  The
trial court declared, among other things, (1) that the removal of Horton as a
member of the Association’s board of trustees was proper and (2) that the
removal of Hill as a specially appointed officer of the Association was
proper.  The trial court awarded appellees $48,000 for attorney’s fees through
trial plus additional amounts in the event of an appeal.  Hill and Horton
appeal.  We affirm.

Background

           
Sportsman’s World is a residential and commercial real estate development in
Palo Pinto County, Texas, and it is divided into numbered sections.  This
suit involves property that is located in Section Eleven.  This property
is subject to the “Declaration of Covenants, Conditions and Restrictions for
Sportsman’s World, Section Eleven (Ranch Estates).”  The Association was
created in connection with the development of Sportsman’s World.  It is a
Texas non-profit corporation, and it is governed by the “By-Laws of Sportsman’s
World Ranch Owners’ Association, Inc.”

Issues
Presented

           
In their first four issues, Hill and Horton contend that the trial court
misconstrued and misapplied the relevant provisions of the declaration and
bylaws in declaring the following: (1) that the removal of Horton as a
trustee of the Association at a meeting that occurred on January 8, 2005, was
proper; (2) that the removal of Hill as an officer of the Association and
special appointee of the board of trustees at the January 8, 2005 meeting was
proper; (3) that the appointment of appellees Boully and Womack to the board of
trustees at the January 8, 2005 meeting was proper; and (4) that the
Association’s members properly ratified the actions taken at the January 8,
2005 meeting.  In their fifth issue, Hill and Horton contend that the
trial court erred in failing to award them costs and attorney’s fees and in
awarding appellees costs and attorney’s fees.

Interpretation
of Declaration and Bylaws

           
We must construe the declaration and bylaws according to the general rules that
apply to the construction of contracts.  Scoville v. Springpark
Homeowner’s Ass’n, Inc., 784 S.W.2d 498, 502 (Tex. App.—Dallas 1990, writ
denied); see also 18A Am. Jur.
2d Corporations § 323
(1985).  When construing a contract, our primary concern is to give effect
to the written expression of the parties’ intent.  Frost Nat’l Bank v.
L & F Distribs., Ltd., 165 S.W.3d 310, 311-12 (Tex. 2005); Fawcett,
Ltd. v. Idaho N. & Pac. R.R. Co., 293 S.W.3d 240, 244 (Tex.
App.—Eastland 2009, pet. denied).  We must examine and consider the entire
writing in an effort to harmonize and give effect to all the provisions of the
contract so that no provision will be rendered meaningless.  Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983); Fawcett, 293 S.W.3d at
244.  If the language in a written instrument can be given a definite
legal interpretation, courts will construe the instrument as a matter of
law.  Coker, 650 S.W.2d at 393; Fawcett, 293 S.W.3d at 244.

Evidence
at Trial

           
The declaration provides that record owners of properties located in
Sportsman’s World, Section Eleven, are members of the Association. 
Article II, Section 3 of the declaration creates two classes of voting
membership.  Class A members are defined as “all Owners with the exception
of the Declarant.”  The declaration provides that each Class A member
“shall be entitled to one vote for each acre owned, rounded to the nearest
acre.”  The Declarant was Landar Corporation, the developer of the
property.  Landar was the sole Class B voting member.  Under the
declaration, Landar’s Class B membership ended in 1989 at the latest;
therefore, only Class A voting membership existed after that date. 
Article II, Section 5 of the declaration provides that “[t]he Association may
make whatever rules or by-laws it may choose to govern the organization,
provided that same are not in conflict with the terms and provisions hereof.”

           
Article III, Section 1 of the Association’s bylaws provides that “[t]here shall
be two classes of membership in this Association as provided in the
Declaration.”  Article III, Section 6 allows members to vote in person or
by proxy.

           
Article IV, Section 1 of the bylaws provides that “[t]he affairs of this
Association shall be managed by a Board of three (3) trustees, who need not be
members of the Association.”   Article IV, Section 3 governs the
removal of trustees from the board of trustees:

           
Section 3.  Removal.  Any trustee may be removed from
the Board, with or without cause, by a majority vote of the members of the
Association.  In the event of death, resignation or removal of a trustee,
his successor shall be selected by the remaining members of the Board and shall
serve for the unexpired term of his predecessor. 

 

Article VIII of
the bylaws governs the Association’s officers and their duties.  Article
VIII, Section 1 provides that the Association shall have a president, a
vice-president, a secretary, and a treasurer.  Article VIII, Section 4
allows the board to specially appoint officers.  It provides that “[t]he
Board may elect such other officers as the affairs of the Association may
require, each of who [sic] shall hold office for such period, have such
authority, and perform such duties as the Board may, from time to time
determine.”  Article VIII, Section 5 provides that “[a]ny officer may be
removed from office without cause by the Board.”

           
On January 8, 2005, the Association’s board of trustees held a meeting. 
At that time, the trustees were Horton, Willis McCabe, and Leo
Burkhalter.  McCabe and Burkhalter were present at the January 8, 2005
meeting.  Horton was not present at the meeting.  The minutes of the
meeting and a transcription of a recording of the meeting were introduced into
evidence.  The minutes and transcription show that appellee Boully, who
was a member of the Association, requested to be recognized and that McCabe,
the President of the Association, indicated that Boully would be
recognized.  Boully then stated the following:

The membership which
is represented here today being a majority of the Ranch owners present either
in person or by proxy request the immediate removal of Trustees Gary Horton and
Willis McCabe.  We further request that the remaining Board Member, Leo
Burkhalter, appoint two new trustees to fill the vacated positions.

 

Diana
Higginbotham, another member of the Association, then presented Burkhalter with
proxies.  She stated, “Here are the proxies that we have collected
representing 2,227 votes.”  She also stated, “So we are here as a group of
ranch members who request the removal of Gary Horton and, Willis [McCabe], we would
gladly ask you for your resignation.”  Higginbotham further stated that
“[t]he proxies have been verified with the county records as to the number of
acres, they have been witnessed and we have an accurate accounting.” 
Higginbotham asked on behalf of ranch members that Hill be removed as the board
of trustees’ specially appointed treasurer.  She also asked that appellee
Harmon be added as a special appointee.  Higginbotham also stated as
follows:

           
According to the Covenants if you would like me to read that section:

 

           
“Any Trustee may be removed from the Board with or without cause by a majority
vote of the members of the Association. In the event of death, resignation or
the removal of a Trustee his successor shall be selected by the remaining
members of the board and shall serve the unexpired term of his predecessor.”

 

           
We have a majority vote of the Association represented in person and
proxy.  So we feel this is a legal action that we can ask you to appoint
two new board members

Burkhalter asked
McCabe for his input.  McCabe responded, “I guess they can do it…that’s
why they are all here.”  Burkhalter appointed appellees Womack and Boully
to the Association’s board of trustees.  Burkhalter tendered his
resignation as a trustee.

           
The evidence shows that some of the subject proxies appointed Higginbotham to
vote as a proxy; others appointed Roy Davis to vote as a proxy; others
appointed Linda Woodruff to vote as proxy; and another appointed appellee
Womack to vote as a proxy.  The evidence shows that Higginbotham, Davis,
Woodruff, and appellee Womack were all present at the January 8, 2005
meeting.  The 2,227 votes at the January 8, 2005 meeting were based on one
vote for each acre owned by the members voting in person or by proxy.  At
that time, members of the Association owned a total of about 3,980 acres. 
Therefore, the 2,227 votes constituted a majority of the total votes that could
have been cast on the basis of one vote for each acre owned.

Removal
of Horton as Trustee

           
In their first issue, Hill and Horton contend that the removal of Horton as a
trustee did not comply with the applicable provisions of the declaration and bylaws. 
They argue that, based on the language in Article IV, Section 3 of the bylaws,
removal of a trustee must be based on a per capita or one vote per member vote
as opposed to a one vote for each acre owned vote.    

           
Article IV, Section 3 of the bylaws provides that trustees may be removed from
the board “by a majority vote of the members of the Association.”  Article
II, Section 3 of the declaration provides that members “shall be entitled to
one vote for each acre owned, rounded to the nearest acre.”  The language
in these provisions is clear and unambiguous.  Construing the provisions
together, only one reasonable interpretation exists.  Members are entitled
to cast one vote for each acre owned when seeking to remove a trustee. 
This conclusion harmonizes the provisions in the declaration and bylaws. 
To the contrary, Hill and Horton’s “per capita” interpretation of Article IV,
Section 3 of the bylaws puts it into direct conflict with the declaration’s
requirement that members “shall be entitled to one vote for each acre
owned.”  Because Hill and Horton’s interpretation of the removal provision
creates a conflict between the declaration and bylaws, their interpretation is
unreasonable.  Article II, Section 5 of the declaration prohibits the Association
from making bylaws that conflict with the declaration.  The trial court
did not err in declaring that members cast their votes on a one vote per acre
owned basis when seeking removal of trustees.

           
Hill and Horton also contend that Horton’s removal as a trustee was improper
because “some of the proxies presented to the SWROA Trustees were not voted by
the SWROA member-agent receiving that proxy.”  The record shows that
Higginbotham, Davis, Woodruff, and appellee Womack had obtained proxies from
members before the January 8, 2005 meeting.  Higginbotham presented all
the proxies to Burkhalter at the January 8, 2005 meeting for
consideration.  Davis, Woodruff, and appellee Womack were at the
meeting.  Thus, they were present when Higginbotham stated, “Here are the
proxies that we have collected representing 2,227 votes” and “we are here as a
group of ranch members who request the removal of Gary Horton.”  The
presence of Davis, Woodruff, and appellee Womack at the meeting demonstrates
that they were voting their proxies to remove Horton as a trustee, and the
evidence demonstrates that McCabe and Burkhalter understood that the proxies
were being voted in that manner.   

           
The removal of Horton as a trustee complied with the applicable provisions of
the declaration and bylaws.  We overrule Hill and Horton’s first issue.

Removal
of Hill as Special Appointee

           
In their second issue, Hill and Horton contend that the removal of Hill as an
officer of the Association and special appointee of the board of trustees did
not comply with the applicable provision of the bylaws.  Article VIII,
Section 4 of the bylaws provides as follows:

           
Section 4.  Special Appointments.  The Board may elect
such other officers as the affairs of the Association may require, each of who
[sic] shall hold office for such period, have such authority, and perform such
duties as the Board may, from time to time, determine.

 

Article VIII,
Section 5 of the bylaws provides that “[a]ny officer may be removed from office
without cause by the Board.”  Hill and Horton assert that the board of
trustees did not remove Hill as treasurer and special appointee of the board
but that, instead, “SWROA member Diana Higginbotham purported, on behalf of the
SWROA membership, to remove Appellant and Officer Jim Hill as treasurer and
special appointee of the SWROA Board of Trustees.” 
           

           
The record contains limited evidence about the board of trustees’ appointment
of Hill as an officer.  The evidence shows that, in October 2003, the
board of trustees decided to impose an annual assessment against the
Association’s members.  At that time, the trustees were McCabe,
Burkhalter, and Horton.  The board specially appointed Hill as an officer
in connection with its decision to impose the annual assessment.  In
correspondence to the Association’s members, the board stated that it had
specially appointed Hill “to assist the directors with the assessment that has
been levied by the SWROA directors, and the bookkeeping procedures involved.”

           
In its final judgment, the trial court declared that Hill’s removal as a
special appointee of the board of trustees was proper, effective, and
enforceable.  The evidence supports the trial court’s judgment. 
McCabe and Burkhalter, who were both trustees, were present at the
January 8, 2005 meeting.  Higginbotham requested that Hill be removed
from office.  Based on Article VIII, Section 5 of the bylaws, McCabe and
Burkhalter, as the two trustees at the meeting, had the authority to remove
Hill from office.  Higginbotham also requested that appellee Harmon be
added as a special appointee.

           
The evidence shows that, although no formal motion was made to remove Hill,
trustees Burkhalter and McCabe acquiesced in Higginbotham’s request that Hill
be removed.  After Higginbotham requested Burkhalter to appoint two new
trustees, Burkhalter asked McCabe, “What do you think, Willis?”  McCabe
responded, “I guess that they can do it…that’s why they are all here.” 
Burkhalter then appointed appellees Boully and Womack as trustees, and he also
appointed appellee Harmon as a special appointee of the board.  Appellee
Harmon’s special appointment supports the conclusion that Burkhalter and McCabe
implicitly removed Hill from office.  If Hill were still in office, why
was it necessary to make another special appointment?  After Burkhalter
appointed the new trustees, he resigned as a trustee.  He testified that
he resigned because he believed it was in the new board’s best interest not to
have a carryover member from the old board.  At the January 8, 2005
meeting, Burkhalter stated that “the new board is coming in and they should
ramrod it.”  Based on this statement, which was made in McCabe’s presence,
Burkhalter certainly would have believed that it was in the new board’s best
interest not to have a carryover special appointee from the old board. 
The evidence supports the conclusion that Burkhalter and McCabe removed Hill
from office.

           
However, assuming that Burkhalter and McCabe did not remove Hill from office,
the trial court could have reasonably concluded that Hill’s tenure as a special
appointee of the board ended.  Article VIII, Section 4 of the bylaws
provides that special appointees “shall hold office for such period, have such
authority, and perform such duties as the Board may, from time to time,
determine.”  Hill was specially appointed by the old board.  When
Burkhalter resigned, none of the trustees from the old board of trustees
remained.  Because the old board no longer existed, the trial court may
have concluded that Hill’s role as a special appointee of that board
ended.  The old board specially appointed Hill to assist it with respect
to the annual assessment that it decided to impose.  After the January 8,
2005 meeting was adjourned, the new board of trustees held a board
meeting.  At that meeting, the new board decided to discontinue the annual
assessment.  Because the old board appointed Hill “to assist with the
assessment” and because the assessment no longer existed, the trial court could
have concluded that Hill’s tenure as a specially appointed officer necessarily
ended.

           
Hill’s removal as an officer of the Association complied with the bylaws. 
We overrule Hill and Horton’s second issue.

Appointment
of Boully and Womack as Trustees

           
In their third issue, Hill and Horton contend that Burkhalter’s appointment of
appellees Boully and Womack as trustees did not comply with the applicable
provisions of the bylaws.  Article IV, Section 3 of the bylaws provides
that “[i]n the event of death, resignation or removal of a trustee, his
successor shall be selected by the remaining members of the Board.”  Based
on the presence of the plural word “members” in this provision, Hill and Horton
assert that “there must be at least two remaining Trustees, or a quorum, in
order to appoint a replacement Trustee.”  Therefore, they contend that,
once McCabe and Horton were removed as trustees, Burkhalter, as the only
remaining trustee, could not validly appoint replacement trustees. 
  

           
We disagree with Hill and Horton’s narrow interpretation of Article IV, Section
3 of the bylaws.  What if two trustees resign at the same time?  If
Hill and Horton’s interpretation is accepted, those trustees could not be
replaced by the remaining trustee; therefore, a quorum could not be obtained to
conduct board business.  The Association could not have intended such a
result.  Plural words may be reasonably interpreted to include the
singular.  For example, Section 311.012(b) of the Code Construction Act
provides that “[t]he singular includes the plural and the plural includes the
singular.”  Tex. Gov’t Code Ann.
§ 311.012(b) (Vernon 2005).  If “members” includes “member,” Article IV,
Section 3 allows for appointment of replacement trustees in either of these
situations:  (1) the presence of two remaining members on the board of
trustees upon the death, resignation, or removal of one trustee or (2) the
presence of one remaining member on the board of trustees upon the simultaneous
death, resignation, or removal of two trustees.  Construing Article IV,
Section 3 of the bylaws according to the general rules that apply to contract
construction, we conclude that the term “members” includes “member.”  

           
The appointment of appellees Boully and Womack to the board of trustees
complied with Article IV, Section 3 of the bylaws.  We overrule Hill and
Horton’s third issue.

Ratification
Issue

           
In their fourth issue, Hill and Horton contend that the trial court erred in
ruling that the Association’s members properly ratified the actions taken at
the January 8, 2005 meeting.  Based on our ruling on Hill and Horton’s
first three issues, we need not address their fourth issue.  Tex.  R. App. P. 47.1.

Attorney’s
Fees

           
In their fifth issue, Hill and Horton contend that the trial court erred in
failing to award costs and attorney’s fees to them and in awarding costs and
attorney’s fees to appellees.  In a declaratory judgment action, the trial
court may award costs and reasonable and necessary attorney’s fees as are
equitable and just.  Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (Vernon 2008); GuideOne Elite
Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 311-12 (Tex.
2006).  We review a trial court’s award of attorney’s fees in a
declaratory judgment action for an abuse of discretion.  Ridge Oil Co.
v. Guinn Invs., Inc., 148 S.W.3d 143, 163 (Tex. 2004); Oake v.
Collin County, 692 S.W.2d 454, 455 (Tex. 1985).

           
Hill and Horton do not challenge the reasonableness or necessity of the amount
of attorney’s fees awarded.  Rather, their challenge to the award of
attorney’s fees is based on their contention that the trial court incorrectly
interpreted and applied the declaration and bylaws in granting declaratory
judgment to appellees.  Hill and Horton assert that, had the trial court
correctly interpreted and applied the declaration and bylaws, the trial court
would have rendered a judgment in their favor against appellees.  However,
as we have held above, the trial court did not err in granting declaratory
judgment to appellees.  Therefore, the trial court did not abuse its
discretion in awarding costs and attorney’s fees to appellees.  We
overrule Hill and Horton’s fifth issue. 

This
Court’s Ruling

           
We affirm the judgment of the trial court.

 

 

                                                                                               
TERRY McCALL

                                                                                               
JUSTICE     

 

June 17, 2010

Panel consists of:  Wright,
C.J.,

McCall, J., and Strange, J.