**Opinion filed June 17, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-08-00289-CV

_____

### JIM HILL AND GARY HORTON, Appellants

### V.

### RON BOULLY, MARK WOMACK, MEL WOODRUFF, JIMMY CLYDE HARMON, PATRICIA ANN HARRELL, AND SPORTSMAN'S WORLD RANCH OWNERS' ASSOCIATION, INC., Appellees

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C42014**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a declaratory judgment involving the construction of (1) a declaration of covenants, conditions, and restrictions and (2) corporate bylaws. Upon construing the applicable provisions of the declaration and bylaws, the trial court rendered judgment against Jim Hill and Gary Horton and in favor of Ron Boully, Mark Womack, Mel Woodruff, Jimmy Clyde Harmon, Patricia Ann Harrell, and Sportsman's World Ranch Owners' Association, Inc. The trial court declared, among other things, (1) that the removal of Horton as a member of the

Association's board of trustees was proper and (2) that the removal of Hill as a specially appointed officer of the Association was proper. The trial court awarded appellees $48,000 for attorney's fees through trial plus additional amounts in the event of an appeal. Hill and Horton appeal. We affirm.

*Background*

Sportsman's World is a residential and commercial real estate development in Palo Pinto County, Texas, and it is divided into numbered sections. This suit involves property that is located in Section Eleven. This property is subject to the "Declaration of Covenants, Conditions and Restrictions for Sportsman's World, Section Eleven (Ranch Estates)." The Association was created in connection with the development of Sportsman's World. It is a Texas non-profit corporation, and it is governed by the "By-Laws of Sportsman's World Ranch Owners' Association, Inc."

*Issues Presented*

In their first four issues, Hill and Horton contend that the trial court misconstrued and misapplied the relevant provisions of the declaration and bylaws in declaring the following: (1) that the removal of Horton as a trustee of the Association at a meeting that occurred on January 8, 2005, was proper; (2) that the removal of Hill as an officer of the Association and special appointee of the board of trustees at the January 8, 2005 meeting was proper; (3) that the appointment of appellees Boully and Womack to the board of trustees at the January 8, 2005 meeting was proper; and (4) that the Association's members properly ratified the actions taken at the January 8, 2005 meeting. In their fifth issue, Hill and Horton contend that the trial court erred in failing to award them costs and attorney's fees and in awarding appellees costs and attorney's fees.

*Interpretation of Declaration and Bylaws*

We must construe the declaration and bylaws according to the general rules that apply to the construction of contracts. *Scoville v. Springpark Homeowner's Ass'n, Inc.*, 784 S.W.2d 498, 502 (Tex. App.—Dallas 1990, writ denied); *see also* 18A AM. JUR. 2D *Corporations* § 323 (1985). When construing a contract, our primary concern is to give effect to the written expression of the parties' intent. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005); *Fawcett, Ltd. v. Idaho N. & Pac. R.R. Co.*, 293 S.W.3d 240, 244 (Tex. App.—Eastland 2009, pet. denied). We must examine and consider the entire writing in an effort to

harmonize and give effect to all the provisions of the contract so that no provision will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Fawcett*, 293 S.W.3d at 244. If the language in a written instrument can be given a definite legal interpretation, courts will construe the instrument as a matter of law. *Coker*, 650 S.W.2d at 393; *Fawcett*, 293 S.W.3d at 244.

*Evidence at Trial*

The declaration provides that record owners of properties located in Sportsman's World, Section Eleven, are members of the Association. Article II, Section 3 of the declaration creates two classes of voting membership. Class A members are defined as "all Owners with the exception of the Declarant." The declaration provides that each Class A member "shall be entitled to one vote for each acre owned, rounded to the nearest acre." The Declarant was Landar Corporation, the developer of the property. Landar was the sole Class B voting member. Under the declaration, Landar's Class B membership ended in 1989 at the latest; therefore, only Class A voting membership existed after that date. Article II, Section 5 of the declaration provides that "[t]he Association may make whatever rules or by-laws it may choose to govern the organization, provided that same are not in conflict with the terms and provisions hereof."

Article III, Section 1 of the Association's bylaws provides that "[t]here shall be two classes of membership in this Association as provided in the Declaration." Article III, Section 6 allows members to vote in person or by proxy.

Article IV, Section 1 of the bylaws provides that "[t]he affairs of this Association shall be managed by a Board of three (3) trustees, who need not be members of the Association." Article IV, Section 3 governs the removal of trustees from the board of trustees:

> Section 3. Removal. Any trustee may be removed from the Board, with or without cause, by a majority vote of the members of the Association. In the event of death, resignation or removal of a trustee, his successor shall be selected by the remaining members of the Board and shall serve for the unexpired term of his predecessor.

Article VIII of the bylaws governs the Association's officers and their duties. Article VIII, Section 1 provides that the Association shall have a president, a vice-president, a secretary, and a treasurer. Article VIII, Section 4 allows the board to specially appoint officers. It provides that "[t]he Board may elect such other officers as the affairs of the Association may require, each of who [sic] shall hold office for such period, have such authority, and perform such duties as the

3

Board may, from time to time determine." Article VIII, Section 5 provides that "[a]ny officer may be removed from office without cause by the Board."

On January 8, 2005, the Association's board of trustees held a meeting. At that time, the trustees were Horton, Willis McCabe, and Leo Burkhalter. McCabe and Burkhalter were present at the January 8, 2005 meeting. Horton was not present at the meeting. The minutes of the meeting and a transcription of a recording of the meeting were introduced into evidence. The minutes and transcription show that appellee Boully, who was a member of the Association, requested to be recognized and that McCabe, the President of the Association, indicated that Boully would be recognized. Boully then stated the following:

> The membership which is represented here today being a majority of the Ranch owners present either in person or by proxy request the immediate removal of Trustees Gary Horton and Willis McCabe. We further request that the remaining Board Member, Leo Burkhalter, appoint two new trustees to fill the vacated positions.

Diana Higginbotham, another member of the Association, then presented Burkhalter with proxies. She stated, "Here are the proxies that we have collected representing 2,227 votes." She also stated, "So we are here as a group of ranch members who request the removal of Gary Horton and, Willis [McCabe], we would gladly ask you for your resignation." Higginbotham further stated that "[t]he proxies have been verified with the county records as to the number of acres, they have been witnessed and we have an accurate accounting." Higginbotham asked on behalf of ranch members that Hill be removed as the board of trustees' specially appointed treasurer. She also asked that appellee Harmon be added as a special appointee. Higginbotham also stated as follows:

> According to the Covenants if you would like me to read that section:
>
> "Any Trustee may be removed from the Board with or without cause by a majority vote of the members of the Association. In the event of death, resignation or the removal of a Trustee his successor shall be selected by the remaining members of the board and shall serve the unexpired term of his predecessor."
>
> We have a majority vote of the Association represented in person and proxy. So we feel this is a legal action that we can ask you to appoint two new board members.

Burkhalter asked McCabe for his input. McCabe responded, "I guess they can do it…that's why they are all here." Burkhalter appointed appellees Womack and Boully to the Association's board of trustees. Burkhalter tendered his resignation as a trustee.

The evidence shows that some of the subject proxies appointed Higginbotham to vote as a proxy; others appointed Roy Davis to vote as a proxy; others appointed Linda Woodruff to vote as proxy; and another appointed appellee Womack to vote as a proxy. The evidence shows that Higginbotham, Davis, Woodruff, and appellee Womack were all present at the January 8, 2005 meeting. The 2,227 votes at the January 8, 2005 meeting were based on one vote for each acre owned by the members voting in person or by proxy. At that time, members of the Association owned a total of about 3,980 acres. Therefore, the 2,227 votes constituted a majority of the total votes that could have been cast on the basis of one vote for each acre owned.

*Removal of Horton as Trustee*

In their first issue, Hill and Horton contend that the removal of Horton as a trustee did not comply with the applicable provisions of the declaration and bylaws. They argue that, based on the language in Article IV, Section 3 of the bylaws, removal of a trustee must be based on a per capita or one vote per member vote as opposed to a one vote for each acre owned vote.

Article IV, Section 3 of the bylaws provides that trustees may be removed from the board "by a majority vote of the members of the Association." Article II, Section 3 of the declaration provides that members "shall be entitled to one vote for each acre owned, rounded to the nearest acre." The language in these provisions is clear and unambiguous. Construing the provisions together, only one reasonable interpretation exists. Members are entitled to cast one vote for each acre owned when seeking to remove a trustee. This conclusion harmonizes the provisions in the declaration and bylaws. To the contrary, Hill and Horton's "per capita" interpretation of Article IV, Section 3 of the bylaws puts it into direct conflict with the declaration's requirement that members "shall be entitled to one vote for each acre owned." Because Hill and Horton's interpretation of the removal provision creates a conflict between the declaration and bylaws, their interpretation is unreasonable. Article II, Section 5 of the declaration prohibits the Association from making bylaws that conflict with the declaration. The trial court did not err in declaring that members cast their votes on a one vote per acre owned basis when seeking removal of trustees.

Hill and Horton also contend that Horton's removal as a trustee was improper because "some of the proxies presented to the SWROA Trustees were not voted by the SWROA member-agent receiving that proxy." The record shows that Higginbotham, Davis, Woodruff, and appellee Womack had obtained proxies from members before the January 8, 2005 meeting. Higginbotham presented all the proxies to Burkhalter at the January 8, 2005 meeting for consideration. Davis, Woodruff, and appellee Womack were at the meeting. Thus, they were present when Higginbotham stated, "Here are the proxies that we have collected representing 2,227 votes" and "we are here as a group of ranch members who request the removal of Gary Horton." The presence of Davis, Woodruff, and appellee Womack at the meeting demonstrates that they were voting their proxies to remove Horton as a trustee, and the evidence demonstrates that McCabe and Burkhalter understood that the proxies were being voted in that manner.

The removal of Horton as a trustee complied with the applicable provisions of the declaration and bylaws. We overrule Hill and Horton's first issue.

*Removal of Hill as Special Appointee*

In their second issue, Hill and Horton contend that the removal of Hill as an officer of the Association and special appointee of the board of trustees did not comply with the applicable provision of the bylaws. Article VIII, Section 4 of the bylaws provides as follows:

> Section 4. Special Appointments. The Board may elect such other officers as the affairs of the Association may require, each of who [sic] shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine.

Article VIII, Section 5 of the bylaws provides that "[a]ny officer may be removed from office without cause by the Board." Hill and Horton assert that the board of trustees did not remove Hill as treasurer and special appointee of the board but that, instead, "SWROA member Diana Higginbotham purported, on behalf of the SWROA membership, to remove Appellant and Officer Jim Hill as treasurer and special appointee of the SWROA Board of Trustees."

The record contains limited evidence about the board of trustees' appointment of Hill as an officer. The evidence shows that, in October 2003, the board of trustees decided to impose an annual assessment against the Association's members. At that time, the trustees were McCabe, Burkhalter, and Horton. The board specially appointed Hill as an officer in connection with its decision to impose the annual assessment. In correspondence to the Association's members, the

6

board stated that it had specially appointed Hill "to assist the directors with the assessment that has been levied by the SWROA directors, and the bookkeeping procedures involved."

In its final judgment, the trial court declared that Hill's removal as a special appointee of the board of trustees was proper, effective, and enforceable. The evidence supports the trial court's judgment. McCabe and Burkhalter, who were both trustees, were present at the January 8, 2005 meeting. Higginbotham requested that Hill be removed from office. Based on Article VIII, Section 5 of the bylaws, McCabe and Burkhalter, as the two trustees at the meeting, had the authority to remove Hill from office. Higginbotham also requested that appellee Harmon be added as a special appointee.

The evidence shows that, although no formal motion was made to remove Hill, trustees Burkhalter and McCabe acquiesced in Higginbotham's request that Hill be removed. After Higginbotham requested Burkhalter to appoint two new trustees, Burkhalter asked McCabe, "What do you think, Willis?" McCabe responded, "I guess that they can do it…that's why they are all here." Burkhalter then appointed appellees Boully and Womack as trustees, and he also appointed appellee Harmon as a special appointee of the board. Appellee Harmon's special appointment supports the conclusion that Burkhalter and McCabe implicitly removed Hill from office. If Hill were still in office, why was it necessary to make another special appointment? After Burkhalter appointed the new trustees, he resigned as a trustee. He testified that he resigned because he believed it was in the new board's best interest not to have a carryover member from the old board. At the January 8, 2005 meeting, Burkhalter stated that "the new board is coming in and they should ramrod it." Based on this statement, which was made in McCabe's presence, Burkhalter certainly would have believed that it was in the new board's best interest not to have a carryover special appointee from the old board. The evidence supports the conclusion that Burkhalter and McCabe removed Hill from office.

However, assuming that Burkhalter and McCabe did not remove Hill from office, the trial court could have reasonably concluded that Hill's tenure as a special appointee of the board ended. Article VIII, Section 4 of the bylaws provides that special appointees "shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine." Hill was specially appointed by the old board. When Burkhalter resigned, none of the trustees from the old board of trustees remained. Because the old board no longer existed, the trial court may have concluded that Hill's role as a special appointee of that board

ended.  The old board specially appointed Hill to assist it with respect to the annual assessment that it decided to impose.  After the January 8, 2005 meeting was adjourned, the new board of trustees held a board meeting.  At that meeting, the new board decided to discontinue the annual assessment.  Because the old board appointed Hill "to assist with the assessment" and because the assessment no longer existed, the trial court could have concluded that Hill's tenure as a specially appointed officer necessarily ended.

Hill's removal as an officer of the Association complied with the bylaws.  We overrule Hill and Horton's second issue.

*Appointment of Boully and Womack as Trustees*

In their third issue, Hill and Horton contend that Burkhalter's appointment of appellees Boully and Womack as trustees did not comply with the applicable provisions of the bylaws. Article IV, Section 3 of the bylaws provides that "[i]n the event of death, resignation or removal of a trustee, his successor shall be selected by the remaining members of the Board."  Based on the presence of the plural word "members" in this provision, Hill and Horton assert that "there must be at least two remaining Trustees, or a quorum, in order to appoint a replacement Trustee." Therefore, they contend that, once McCabe and Horton were removed as trustees, Burkhalter, as the only remaining trustee, could not validly appoint replacement trustees.

We disagree with Hill and Horton's narrow interpretation of Article IV, Section 3 of the bylaws.  What if two trustees resign at the same time?  If Hill and Horton's interpretation is accepted, those trustees could not be replaced by the remaining trustee; therefore, a quorum could not be obtained to conduct board business.  The Association could not have intended such a result.  Plural words may be reasonably interpreted to include the singular.  For example, Section 311.012(b) of the Code Construction Act provides that "[t]he singular includes the plural and the plural includes the singular."  TEX. GOV'T CODE ANN. § 311.012(b) (Vernon 2005).  If "members" includes "member," Article IV, Section 3 allows for appointment of replacement trustees in either of these situations:  (1) the presence of two remaining members on the board of trustees upon the death, resignation, or removal of one trustee or (2) the presence of one remaining member on the board of trustees upon the simultaneous death, resignation, or removal of two trustees.  Construing Article IV, Section 3 of the bylaws according to the general rules that apply to contract construction, we conclude that the term "members" includes "member."

The appointment of appellees Boully and Womack to the board of trustees complied with Article IV, Section 3 of the bylaws. We overrule Hill and Horton's third issue.

*Ratification Issue*

In their fourth issue, Hill and Horton contend that the trial court erred in ruling that the Association's members properly ratified the actions taken at the January 8, 2005 meeting. Based on our ruling on Hill and Horton's first three issues, we need not address their fourth issue. TEX. R. APP. P. 47.1.

*Attorney's Fees*

In their fifth issue, Hill and Horton contend that the trial court erred in failing to award costs and attorney's fees to them and in awarding costs and attorney's fees to appellees. In a declaratory judgment action, the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 311-12 (Tex. 2006). We review a trial court's award of attorney's fees in a declaratory judgment action for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985).

Hill and Horton do not challenge the reasonableness or necessity of the amount of attorney's fees awarded. Rather, their challenge to the award of attorney's fees is based on their contention that the trial court incorrectly interpreted and applied the declaration and bylaws in granting declaratory judgment to appellees. Hill and Horton assert that, had the trial court correctly interpreted and applied the declaration and bylaws, the trial court would have rendered a judgment in their favor against appellees. However, as we have held above, the trial court did not err in granting declaratory judgment to appellees. Therefore, the trial court did not abuse its discretion in awarding costs and attorney's fees to appellees. We overrule Hill and Horton's fifth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


June 17, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.